Earl Mack **WILLIAMS**, Petitioner,

v.

**C. C. PEYTON**, Superintendent, Virginia State Penitentiary, Respondent.

**Civ. A. No. 69–C–4–R.**

United States District Court
W. D. Virginia,
Roanoke Division.

March 25, 1969.

Gerald L. Baliles, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before this court on a petition for a writ of habeas corpus, filed in forma pauperis by Earl Mack Williams, a state prisoner, pursuant to 28 U.S.C.A. § 2241. The petition was filed on January 13, 1969.

Petitioner is currently serving a life sentence in the Virginia State Penitentiary pursuant to a judgment of the Circuit Court of Roanoke County on March 5, 1954, wherein he was convicted of the crime of rape. The conviction resulted after a trial by jury in which the petitioner was represented by court appoint-

ed counsel and entered a plea of not guilty. No appeal was taken from the conviction.

■ A plenary hearing was held in the Circuit Court of Roanoke County on May 26, 1965, as the result of a petition for a writ of habeas corpus filed in the state courts by the petitioner. After hearing the evidence, but before the court's ruling, the petitioner requested that his petition be withdrawn which was granted by a court order dated October 5, 1965. On August 8, 1966, the petitioner again filed a petition for a writ of habeas corpus in the Circuit Court of Roanoke County attacking the validity of his current detention. The court was advised that there was no new or additional evidence to be introduced and that the evidence, records and exhibits introduced in the previous proceeding would be relied upon as a basis for the second petition. The Circuit Court by order dated June 7, 1967, denied the writ and dismissed the petition. An appeal was taken to the Virginia Supreme Court of Appeals and by order dated March 6, 1968, the writ of error was refused and the petition rejected. Thus having exhausted his state remedies the petition is properly before this court in compliance with 28 U.S.C.A. § 2254, as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Petitioner presents a single claim to this court for consideration, that being the petitioner was denied access to an existing system of appellate review solely because of indigency. More specifically the petitioner alleges that the state refused to provide him a free transcript of his trial even though he was indigent and that such denial prevented his access to the state appellate review system.

The pertinent facts surrounding the petitioner's claim are these. The petitioner was tried and convicted of rape on March 5, 1954, in the Circuit Court of Roanoke County after a trial by jury in which the petitioner was represented by court appointed counsel and in which he entered a plea of not guilty. After the trial, on April 21, 1954, the petitioner wrote a letter[1] to the clerk of the Circuit Court of Roanoke County, Virginia, in which he stated his intention of taking an appeal and further requested the clerk to send him a list or name of each paper pertaining to his trial along with the price or cost of each individual paper. The letter further stated that upon receiving the requested information the petitioner would immediately forward the necessary amount of money "to cover the cost of a certified copy of each and every paper." In reply to petitioner's request the clerk of the circuit court, by letter dated April 23, 1954, advised the petitioner that a copy of the warrant, indictment, and the court order with the names and verdict of the jury could be made available for a cost of five dollars. The clerk further informed the petitioner that the testimonial evidence had been taken down, but never transcribed, and that if the petitioner desired a tran-

1. County Court Clerk     April 21, 1954
Roanoke County     500 Spring St.
Salem, Virginia     Richmond, Va.
Dear Sir:

I was tried in Judge Hoback's court on March 5, 1954, and sentenced to life. I do not know my case number.

I have intentions of taking an appeal. Therefore I would like to have you send me a list or name of each paper pertaining to my trial, along with the price or cost of each indevigual (sic) paper, such as Warrant, Indictment, Jurys Verdict, Transcript, Sentencing, Committement (sic) Papers, etc. I want any and all papers that are in any way connected with my trial.

Upon receiving this information from you, I will immediately forward to you the necessary amount of money to cover the cost of a certified copy of each and every paper.

Thanking you in advance for all consideration given this request. I remain.

P.S. Please include papers pertaining to Preliminary hearing and all Motions, etc.

Sincerely yours,
Alvie Leo Carmack
Earl Mack Williams
#65379
500 Spring St.
Richmond, Virginia

scribed copy he should contact Mr. Marcus A. Bieler, the court reporter, from whom he could receive an estimate as to cost. Copies of the warrant, indictment and court order were paid for by petitioner's mother according to a letter dated May 13, 1954, and copies of the same were sent to petitioner on May 17, 1954.

According to petitioner's testimony at the state habeas corpus hearing, he corresponded with the court reporter who advised him that a trial transcript would cost approximately $160.00. However, the record shows, and the petitioner's testimony confirmed, that there was no further correspondence with the court until February 8, 1955, at which time the petitioner filed a "Petition for Records of Trial" in the Circuit Court of Roanoke County. The "petition" states that it is the intention of the petitioner to seek a legal remedy in the Virginia Supreme Court of Appeals, that petitioner is without funds to pay for the necessary records and that the named documents (one of the named documents is a certified copy of the trial transcript) are necessary for the preparation of the petition to be submitted to the Virginia high court. A letter from the petitioner to the judge of the circuit court, which accompanied the "petition for the records of trial" states that the petitioner was aggrieved by the results of his March 5, 1954 trial, and that he feels his case should be reviewed by the Supreme Court of Appeals, even though it is too late to seek a writ of error. In a letter dated February 19, 1955, the judge of the circuit court advised the petitioner that the requested papers, with the exception of the court reporter's notes, which were never transcribed, were in the official file in the clerk's office and were available for inspection by the petitioner's attorney, or any other duly constituted agent at any time during business hours. However the judge noted that the state law, which was cited by petitioner as authority for the production of the documents, was not applicable, especially since the time had long since expired within which the petitioner could have filed an application for appeal from the conviction of March 5, 1954.

On March 31, 1955, the petitioner again wrote to the judge of the circuit court requesting that the records of his trial be made available to him at state expense because of his indigency. In a letter to the petitioner, dated April 13, 1955, the judge enclosed certified copies of the warrant, indictment, verdict, order appointing counsel to represent the petitioner, and an order showing the conviction and sentence. However, the judge explained that he knew of no provision whereby he could direct the court reporter to furnish a copy of the evidence unless the petitioner made the necessary financial arrangements with the reporter. The judge further explained that there were no duplicates of the exhibits introduced at the trial and that the originals were in the possession of the clerk of the court and available for any proper legal proceedings that might require their use.

The record before this court also includes two letters from the petitioner to the court appointed attorney who had represented him at his trial. The first letter, dated October 25, 1954, is a request for information as to what name the petitioner was indicted under, tried under and sentenced under; and also an inquiry as to whether it would be possible to get a photostatic copy of an enlarged thumb print that was used in the trial. The second letter, dated January 23, 1955, states that the petitioner's trial counsel had furnished him everything except the thumb print which the counsel had suggested might be secured from the clerk of the court. The petitioner, not having heard from the clerk, requested that the petitioner's trial counsel intercede on his behalf. The petitioner testified that he wrote his court appointed attorney several times concerning an appeal although neither of the letters which are part of the record indicate a desire to appeal. On the other hand, the petitioner's trial counsel testified that the petitioner never discussed an appeal

with him or requested an attorney to aid in an appeal.

██ It is well settled that the refusal to provide an indigent defendant with a free transcript of the record constitutes a denial of fundamental constitutional rights. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Puckett v. North Carolina, 343 F.2d 452 (4th Cir. 1965). If because of the petitioner's indigency he was prevented from obtaining a transcript of his trial proceedings and the lack of the transcript prevented him from receiving appellate review, then he is imprisoned in violation of the Fourteenth Amendment. Griffin v. Illinios, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Medberry v. Patterson, 188 F.Supp. 557 (D.C.Colo.1960). Upon a review of the record this court does not find that petitioner's indigency in any way prevented him from seeking appellate review in the state courts. The record reveals that petitioner did not correspond with the court concerning his trial until April 21, 1954, some 47 days after the trial. The letter states that the petitioner had the intention of taking an appeal. The letter, however, does not request the aid of counsel or the production of a free transcript but rather expressly states that the petitioner would pay for "the cost of a certified copy of each and every paper." The requested papers, with the exception of the transcript which was in the possession of the court reporter and not the court, were provided the petitioner for a fee of five dollars which the petitioner's mother paid.

██ After the April 24, 1954 letter, the next correspondence with the court relating to a transcript of the evidence is almost a year after the trial when on February 8, 1955 the petitioner filed a petition for the records of his trial. This, of course, is over sixty days after conviction, the time period required by Virginia law in which to note an appeal. In a letter accompanying the request for the free transcript the petitioner acknowledges that appeal has been closed by the passage of time and that he must seek some other legal remedy. It was at this juncture that the state denied the petitioner a free transcript of the evidence, a time when access to the existing state appellate system had been long foreclosed. Federal habeas corpus is available only when there has been a denial of a constitutional right. We find no denial of access to an existing state appellate system, as the petitioner claims, because he was indigent and could not afford the cost of a transcription of the trial. We find rather that the petitioner did not request a free transcript of the trial until long after the avenue of appeal had been closed, and hence that the refusal to provide the transcript at this point was not the factor that prevented appellate review. This conclusion is buttressed by the testimony of the petitioner's counsel who testified that the petitioner had never at any time discussed an appeal with him.

For the foregoing reasons the petitioner has failed to convince this court that he is entitled to any relief based upon his claim. It is therefore adjudged and ordered that the writ be denied and the petition dismissed.