PEOPLE v. CROSS

OPINION OF THE COURT

1. CRIMINAL LAW—INDIGENTS—TRANSCRIPTS—REQUEST FOR TRANSCRIPT—SUPERINTENDING CONTROL—DELAYED APPEAL.

An indigent defendant's *pro se* petition for writ of *habeas corpus* which posed the question whether the trial court's denying him the trial transcript and records of his case, requested to perfect his post-conviction *in propria persona* delayed appeal, was treated by the appellate court as an application for superintending control, not an application for leave to take a delayed appeal, where the only portions of the trial transcript available to the appellate court were those quoted in the prosecuting attorney's brief opposing the defendant's application, because the United States Supreme Court has admonished courts in such situations to refrain from taking the role of *parens partriae*.

2. CRIMINAL LAW—DELAYED APPEAL—LIMITATION ON TIME—COURT RULE.

No limit on the time exists during which a convicted criminal defendant may seek leave to take a delayed appeal (GCR 1963, 806.4[2]).

3. CONSTITUTIONAL LAW—FEDERAL CONSTITUTIONAL RIGHTS—UNITED STATES SUPREME COURT DECISION—BINDING EFFECT.

Decisions of the United States Supreme Court are controlling in any case dealing with the determination of rights under

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 345 *et seq.*
[2] 4 Am Jur 2d, Appeal and Error § 292 *et seq.*
[3, 4] 20 Am Jur 2d, Courts § 226.
[5–12] 4 Am Jur 2d, Appeal and Error § 345 *et seq.*
 Right of indigent defendant in criminal case to aid of state as regards new trial or appeal. 55 ALR2d 1072.
[12] 16 Am Jur 2d, Constitutional Law § 131.
[13, 14] 4 Am Jur 2d, Appeal and Error § 345.
 16 Am Jur 2d, Constitutional Law § 131.

the Federal constitution; the Court of Appeals is bound by
the decisions of the United States Supreme Court and the
Michigan Supreme Court defining Federal constitutional rights.

4. CONSTITUTIONAL LAW—FEDERAL CONSTITUTIONAL RIGHTS—UNITED
STATES SUPREME COURT DECISION—MINIMUM STANDARDS—BINDING
EFFECT.

Any state constitutional or statutory provision, any state court
rule, or any holding in a state court decision which defines
Federal constitutional rights must fall if it fails to meet the
minimum standards set forth in decisions of the United States
Supreme Court.

5. CRIMINAL LAW—INDIGENTS—FREE TRANSCRIPTS—RIGHT TO COUN-
SEL—COMPARISON—UNITED STATES SUPREME COURT DECISIONS.

An indigent criminal defendant's right to a free transcript on
appeal is considered by the United States Supreme Court to
be more basic than an indigent criminal defendant's right to
counsel on appeal; the lack of a transcript affects the access
to the courts or the availability of appeal, while the lack of
counsel affects the quality of appeal.

6. CRIMINAL LAW—INDIGENTS—EQUAL APPELLATE REVIEW—FREE
TRANSCRIPTS—CONSTITUTIONAL LAW.

Destitute criminal defendants must be afforded as adequate an
appellate review as defendants who have money enough to buy
transcripts (US Const, Am 14).

7. CRIMINAL LAW—INDIGENTS—RIGHT TO TRANSCRIPT—CONSTITU-
TIONAL LAW—EQUAL PROTECTION.

The provision of the Michigan constitution vesting the trial judge
with the power and discretion to deny an indigent criminal
defendant a transcript of his trial is unconstitutional as vio-
lative of equal protection of the laws, because a trial transcript
is readily available to criminal defendants who have the money
to buy one and because the constitutional provision allowing
discretion applies only to indigents, not to non-indigents (Const
1963, art 1, § 20; US Const, Am 14).

8. CONSTITUTIONAL LAW—CRIMINAL LAW—INDIGENTS—DELAYED AP-
PEAL—TRANSCRIPTS.

An indigent criminal defendant has the right to a transcript
of his trial in order to seek leave to take a delayed appeal;
an indigent defendant's right to a transcript of his trial at
public expense is not lost by his failure to take a timely appeal
as of right (US Const, Am 14; Const 1963, art 1, § 20).

9. Constitutional Law—Criminal Law—Indigents—Transcripts —Post-Conviction Proceedings—Equal Protection.

Denial of free transcripts of hearings in collateral post-conviction proceedings to indigent criminal defendants is a denial of equal protection of the laws once the state has established those post-conviction proceedings (US Const, Am 14; Const 1963, art 1, § 20).

10. Constitutional Law—Criminal Law—Indigents—Right to Appellate Review.

A state may not foreclose indigent criminal defendants from access to any phase of appellate review because of the defendants' poverty once the state has established those phases of appellate review; indigent criminal defendants must have equal access to all phases of appellate review, both direct and collateral.

11. Constitutional Law—Criminal Law—Indigents—Delayed Appeal—Transcripts—Equal Protection.

An indigent criminal defendant is constitutionally entitled to a free transcript of his trial and free records of his case when attempting to seek leave to take a delayed appeal because this state has established that one convicted of a crime who has failed to take a timely appeal as of right from his conviction may, upon a showing of merit and lack of culpable negligence in delay, obtain leave to take a delayed appeal; if the granting of a free transcript were within the discretion of the trial court, the indigent defendant would be denied equal protection of the laws, because once the state has established an avenue of appellate review, that avenue must be kept free of unreasoned distinctions that can only impede open and equal access to the courts (Const 1963, art 1, § 20; US Const, Am 14).

12. Constitutional Law—Waiver—Definition—Waiver of Constitutional Rights—Presumption.

Waiver is the intentional relinquishment or abandonment of a known right; there exists every reasonable presumption against waiver of constitutional right.

13. Constitutional Law—Criminal Law—Indigents—Delayed Appeal—Transcripts—Waiver—Presumption.

Every presumption exists against an indigent defendant's waiving his right to a transcript of his trial at public expense for use in preparing an application for leave to take a delayed appeal, even if the indigent has failed to take a timely appeal as of right.

DISSENT BY HOLBROOK, J.

14. CRIMINAL LAW—INDIGENTS—DELAYED APPEAL—TRANSCRIPTS—
CONSTITUTIONAL LAW.

*An indigent defendant was not entitled to free records and trial
transcripts of his case where the trial court at sentencing
advised the defendant that he had the right to appeal, that
free transcripts would be given him, that counsel would be
appointed at public expense, that the forms requesting the
records, transcripts, court-appointed counsel, and right of ap-
peal must be filed within 60 days and that if the forms were
not filed within 60 days, the defendant would lose his right to
appeal, his right to court-appointed counsel, and his right to
free transcripts, where the defendant did not file the forms
until over 90 days after sentencing, and where the defendant
has not shown any meritorious basis for an appeal or has not
shown why the delay in filing the forms was not due to his
own culpable negligence (Const 1963, art 1, § 20; GCR 1963,
803.3, 806.4[2].)*

Appeal from Genesee, Elza H. Papp, J. Submit-
ted Division 2 November 24, 1970, at Detroit.
(Docket No. 8911.) Decided February 11, 1971.
Affirmed by Supreme Court, 386 Mich 237.

Everett V. Cross was convicted, on his plea of
guilty, of unlawfully driving away an automobile.
Defendant's motion for free records of the case and
free transcripts of his trial to perfect a delayed
appeal denied. Defendant filed a complaint for writ
of *habeas corpus* in the Court of Appeals. Defend-
ant's complaint treated as a complaint for a writ of
superintending control ordering the granting of free
records and transcripts. Superintending control
granted.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Robert F. Leonard,*
Prosecuting Attorney, and *Donald A. Kuebler,* Chief
Assistant Prosecuting Attorney, for the people.

Everett V. Cross, *in propria persona.*

Before: LESINSKI, C. J., and HOLBROOK and T. M.
BURNS, JJ.

LESINSKI, C. J.  Cross, an indigent, was charged
with unlawfully driving away an automobile.[1]  On
June 20, 1969, he pleaded guilty to the charge and
on August 5, 1969, he was sentenced to a term of
4–1/2 to 5 years.  On November 6, 1969, defendant
*in propria persona* filed with the trial court a motion
requesting that the court direct the county clerk to
furnish him with the following specified records and
transcripts:

"Complaint; Warrant; Transcripts of Arraign-
ment; Transcripts of Preliminary Examination;
Return of Order of Allowance; Transcripts of Cir-
cuit Court Arraignment; Transcripts of Guilty Plea;
and the Transcripts of Sentencing."

Defendant represented to the court that the rec-
ords and transcripts were required "for the purpose
of perfecting an appeal (delayed) post-conviction".

It should be noted that this was defendant's first
and only effort to appeal his conviction or to obtain
any post-conviction relief, either direct or collateral.

On November 17, 1969, the Honorable Elza H.
Papp denied defendant's motion stating as grounds
that:

"This cause coming on to be heard on the motion
of defendant Everett V. Cross, *in propria persona,*
who petitions the court to enter an order directing
the circuit court clerk to give him transcripts and
records of his case at public expense because of his
alleged indigent status; and

"Whereas, it appears that defendant was sen-
tenced on August 5, 1969, by the Honorable Stewart
A. Newblatt, J., and was informed by the court of

---

[1] MCLA § 750.413 (Stat Ann 1954 Rev § 28.645).

his rights to appellate review, and that such requests were to be made to the court within 60 days from that date, and that failure to timely petition for either indigent appellate counsel or free records in his case would cause him to lose those rights; and

"Whereas, it appears that defendant's present request dated November 6, 1969, has not been timely filed, and there is no showing that the delay is not due to defendant's culpable negligence, defendant is not therefore entitled to the relief he now seeks.

"It is, therefore, ordered, that the above motion be, and the same is hereby denied."

On February 4, 1970, defendant, proceeding *in propria persona* and without benefit of transcript, filed a "petition for writ of *habeas corpus*" with this Court. As part of his brief in support of this petition for a writ of *habeas corpus,* defendant presents, *pro se,* the following question:

"1. Ex parte assigned question no. 1

"Did the denial of the trial court to grant petitioner's prayer in his petition for transcripts and records, petitioner acting *in propria persona,* counsel of record, on his first time to make application for post-conviction appeal (delayed) and petitioner unable to appeal his conviction properly without the certified records, operate to deny this injured petitioner his due process of law and equal protection of the laws, under the provisions contained in the Fourteenth Amendment of the Constitution of the United States of America, and under the provisions contained in the Michigan General Court Rules, 803.3, 806.3 and 806.4, respecting (delayed) appeal?"

Under the prior accepted practice of this Court, we would ordinarily, under like circumstances, treat defendant's petition as an application for leave to take a delayed appeal. However, neither this Court nor the defendant has been favored with portions of the records and transcripts sufficient to determine

if there exist meritorious grounds for review of defendant's conviction. We have had access only to that portion of the transcript which the prosecuting attorney quotes in his brief in opposition to the granting of leave to appeal and in opposition to defendant's request that he be furnished with the transcript.

Heeding the admonition of the United States Supreme Court in *Gardner* v. *California* (1969) 393 US 367 (89 S Ct 580, 21 L Ed 2d 601), to refrain from taking the role of *parens patriae,* we have not searched the record to find possible error in defendant's conviction or to determine whether there exists meritorious grounds for appeal. We, therefore, refrain from granting or denying leave to appeal and will treat the claim of defendant contained in his question quoted above as an application for superintending control.

Thus, for the first time the question is clearly and squarely presented to an appellate court of this state—Does a convicted defendant who has not taken a timely appeal as of right, have a right to be provided with free transcripts of trial court proceedings when he later requests such transcripts for the purpose of preparing, *pro se,* an application for leave to take a delayed appeal?

Under the provisions of Const 1963, art 1, § 20, every person convicted of a crime has an appeal as a matter of right. GCR 1963, 803.1 provides for a jurisdictional limit of 60 days for the taking of the appeal of right. See, also, GCR 1963, 806.1.

GCR 1963, 803.3 permits delayed appeals and provides that after expiration of the period for timely appeal, this Court may, in its discretion, grant leave to appeal upon a showing of merit in the grounds for appeal and that the delay was not due to the defendant's culpable negligence.

In criminal appeals there is no limit on the time during which a convicted defendant may seek leave to take a delayed appeal. GCR 1963, 806.4(2). *Hampton* v. *Buchkoe* (CA 6, 1964), 334 F2d 6, 7.

There is no need to consider in this case whether the Court must appoint counsel to assist a convict in taking a delayed appeal.[2] However, it cannot be disputed that Const 1963, art 1, § 13 confers the right to seek relief *in propria persona* via that appellate route.

The question remains as to what assistance, if any, must be provided by the state to an indigent proceeding *in propria persona* who has failed to take a timely appeal as of right and is seeking leave to take a delayed appeal from his conviction. Const 1963, art 1, § 20 requires that an indigent shall have the right "to have an appeal as a matter of right; and in courts of record, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal".

In this situation we are faced with two basic questions: (1) Did the indigent, by failing to take a timely appeal, waive or in any other manner, lose his right to be provided with a transcript for use in perfecting and prosecuting a delayed appeal? (2) May the giving or withholding of a transcript be placed within the discretion of the trial judge? The ultimate question, of course, is whether the indigent defendant seeking leave to take a delayed appeal is entitled to a transcript of the trial court proceedings.

We are here clearly confronted with a question of defendant's right under the Constitution of the United States. In any case requiring the determination of rights under the Federal Constitution, decisions of the United States Supreme Court are con-

[2] See *People* v. *Berry* (1970), 384 Mich 270, which held that there is no right to counsel at public expense for indigents who seek leave to appeal.

trolling; and the Supreme Court of Michigan is bound by the decisions of the United States Supreme Court which define Federal Constitutional rights. *Boykin* v. *Alabama* (1969) 395 US 238 (89 S Ct 1709, 23 L Ed 2d 274); *Chapman* v. *California* (1967), 386 US 18 (87 S Ct 824, 17 L Ed 2d 705), *reh den* 386 US 987 (87 S Ct 1283, 18 L Ed 2d 241); *Murphy* v. *Waterfront Commission of New York Harbor* (1964), 378 US 52 (84 S Ct 1594, 12 L Ed 2d 768); *Malloy* v. *Hogan* (1964), 378 US 1 (84 S Ct 1489, 12 L Ed 2d 653); *Maryland Committee for Fair Representation* v. *Tawes* (1964), 377 US 656 (84 S Ct 1429, 12 L Ed 2d 595); *Advisory Opinion re Constitutionality of PA 1966, No 261* (1968), 380 Mich 736; *People v. Walker (On Rehearing,* 1965), 374 Mich 331; *People* v. *Gonzales* (1959), 356 Mich 247.

In following these decisions of the United States Supreme Court and the Michigan Supreme Court, this Court has held in a number of cases that in the determination of Federal Constitutional rights, decisions of the United States Supreme Court are binding on this Court. *People* v. *Wiejecha* (1968), 14 Mich App 486; *People* v. *Wolfe* (1967), 5 Mich App 543; *People* v. *Imbrunone* (1966), 5 Mich App 42. It is obvious, therefore, that any constitutional or statutory provision, any court rule, or any holding in a state court decision which defines Federal Constitutional rights must fall if it fails to meet minimum standards set forth in decisions of the United States Supreme Court.[3]

An examination of the decisions of that Court shows that an indigent's right to a free transcript

---

[3] At the time of repeal of GCR 1963, 785.4, the Supreme Court directed this Court to proceed "in accordance with such decisions of the United State Supreme Court and of the Supreme Court of Michigan as may be deemed applicable". 379 Mich xxxi. Thus, as an intermediate appellate court, we do not hesitate to so decide this constitutional question of first impression in this state.

on appeal is considered to be more basic than his right to counsel on appeal. *Griffin* v. *Illinois* (1956), 351 US 12 (76 S Ct 585, 100 L Ed 891, 55 ALR2d 1055), *reh den* 351 US 958 (76 S Ct 844, 100 L Ed 1480), which established the right of an indigent to be furnished with a transcript at public expense on appeal was decided seven years before *Gideon* v. *Wainwright* (1963), 372 US 335 (83 S Ct 792, 9 L Ed 2d 799, 93 ALR2d 733), which established the right to counsel at trial in noncapital cases and *Douglas* v. *California* (1963), 372 US 353 (83 S Ct 814, 9 L Ed 2d 811), *reh den* 373 US 905 (83 S Ct 1288, 10 L Ed 2d 200), which established the right to counsel on appeal. The cases, *post,* show that the Court regards the lack of transcript as affecting access to the courts or availability of appeal, whereas the lack of counsel affects the quality of appeal.

The question of the right of an indigent to a free trial transcript was first considered by the Court in *Griffin* v. *Illinois, supra.* That case concerned a timely direct appeal from an armed robbery conviction. Defendant requested a transcript for use on appeal and the trial court denied the motion. In reversing the denial, the United States Supreme Court said that there is no constitutional requirement that a state provide appellate courts or any right to appellate review. However, once having established an appellate court and a method of appellate review, the equal protection clause of the Fourteenth Amendment[4] made it mandatory that the appellate review provided be made available to rich and poor alike. The court held that the denial of a free transcript "effectively denies the poor an adequate appellate review accorded to all who have money enough to pay the cost in advance". Therefore, those who are unable to pay for a transcript

---

4 US Const, Am 14.

were denied equal protection of the laws. It was further held that the Fourteenth Amendment prohibited such invidious discrimination "at all stages of the proceedings". Justice Frankfurter, concurring, said that Illinois, by denying free transcripts to indigent appellants "has thereby shut off means of appellate review for indigent defendants".

The gist of the Court's holding in *Griffin* may be summed up in the one statement: "Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts".

As stated above, Const 1963, art 1, § 20, provides, in effect, that an indigent appellant has a right to reasonable assistance (which includes the furnishing of a transcript at public expense) "when the trial court so orders". Thus, the granting or withholding of this right is placed within the discretion of the trial judge. In *Eskridge v. Washington State Board of Prison Terms and Paroles* (1958), 357 US 214 (78 S Ct 1061, 2 L Ed 2d 1269), the Court considered a Washington law, having the same effect, which provided that the trial judge might furnish an indigent defendant a transcript at public expense "if in his opinion justice will be thereby promoted". The Court struck down this provision as unconstitutional holding that the conclusion of the trial judge is not an adequate substitute for the full appellate review available to all Washington defendants who have enough money to buy the transcript. In a *per curiam* opinion, the Court said (p 216):

"In *Griffin v. Illinois* (1956), 351 US 12 (76 S Ct 585, 100 L Ed 891, 55 ALR2d 1055), we held that a state denies a constitutional right guaranteed by the Fourteenth Amendment if it allows all convicted defendants to have appellate review except those who cannot afford to pay for the records of their trials.

We hold that Washington has denied this constitutional right here. The conclusion of the trial judge that there was no reversible error in the trial cannot be an adequate substitute for the right to full appellate review available to all defendants in Washington who can afford the expense of a transcript."

Thus, Const 1963, art 1, § 20, if construed as vesting the trial judge with discretionary power to deny to an indigent defendant a transcript which is available to defendants who can afford to pay for it, conflicts with the decision of the United States Supreme Court in *Eskridge.* Clearly, the discretionary power to so withhold a transcript from an indigent defendant is a denial of equal protection of the laws.

Following the decision in *Eskridge,* the State of Washington formulated new court rules which provided that trial judges might grant free transcripts to indigents upon a showing of "nonfrivolity" of the appeal instead of the "promotion of justice" finding which had been invalidated by *Eskridge.* In *Draper* v. *Washington* (1963), 372 US 487 (83 S Ct 774, 9 L Ed 2d 899), the application of the test of "nonfrivolity" as applying only to indigents was also held to be violative of the equal protection clause. The court held that the test of nonfrivolity could stand only if, in determining the availability of transcripts, the tests of nonfrivolity of appeal were applied to indigent and non-indigent alike. The court said (p 499):

"Moreover, since nothing we say today militates against a state's formulation and application of operatively nondiscriminatory rules to both indigents and nonindigents in order to guard against frivolous appeals, the affording of a 'record of sufficient completeness' to indigents would ensure that, if the appeals of both indigents and nonindigents are to be tested for frivolity, they will be tested on the same basis by the reviewing court."

Obviously, the portion of Const 1963, art 1, § 20, which places the granting or withholding of a transcript within the discretion of the trial judge applies only to indigents. It obviously does not apply to those who have money to buy transcripts. Under the holding of the United States Supreme Court in *Draper,* such a provision which applies only to indigents and not to non-indigents, is clearly a violation of the equal protection clause.

The prosecuting attorney in opposing the granting of records and transcripts to defendant takes the position that defendant had a right to a transcript at public expense while he had available an appeal as of right. It is contended, however, that this right was lost by failure to take a timely appeal as of right and that defendant is, therefore, not entitled to a transcript for use in a discretionary appeal. The court rejected this same contention in *Burns* v. *Ohio* (1959), 360 US 252 (79 S Ct 1164, 3 L Ed 2d 1209).

Ohio court rules provide for an appeal as of right in criminal cases. In 1953, Burns was convicted of burglary and sentenced to life imprisonment. His conviction was affirmed by the Ohio court of appeals that same year. He immediately filed a notice of appeal in the court of appeals but did nothing further until 1957 when he sought leave to appeal in the Supreme Court of Ohio. His motion for leave was rejected for failure to pay a $20 docket fee. Although the case did not deal with a free transcript question, the court had decided the question squarely on the assistance-to-indigents reasoning of *Griffin.*

The state of Ohio argued that the case should be distinguished from *Griffin* because of the fact that Burns had received one appellate review in Ohio, while Illinois had left Griffin without any appellate review of his conviction. The state contended that

*Griffin* did not apply in the case of *Burns,* who was seeking leave to appeal (p 257):

"This is a distinction without a difference for, as *Griffin* holds, once the state chooses to establish appellate review in criminal cases, it may not foreclose indigents from access to *any phase* of that procedure because of their poverty." (Emphasis supplied.)

Responding to Ohio's argument that *Griffin* should be distinguished because review in the Illinois Supreme Court was a matter of right, while leave to appeal in the Ohio Supreme Court was a matter of discretion, the Court said (pp 257, 258):

"Since *Griffin* proceeded upon the assumption that review in the Illinois Supreme Court was a matter of right, 351 US, at 13, Ohio seeks to distinguish *Griffin* on the further ground that leave to appeal to the Supreme Court of Ohio is a matter of discretion. But this argument misses the crucial significance of *Griffin*. In Ohio, a defendant who is not indigent may have the Supreme Court consider on the merits his application for leave to appeal from a felony conviction. But as that Court has interpreted § 1512[5] and its rules of practice, an indigent defendant is denied that opportunity. There is no rational basis for assuming that indigents' motions for leave to appeal will be less meritorious than those of other defendants. Indigents must, therefore, have the same opportunities to invoke the discretion of the Supreme Court of Ohio."

Thus, the situation in *Burns* was very similar to the instant case. The Ohio defendant had failed to perfect his appeal as of right and in his motion for leave to obtain a discretionary appeal it was necessary, as in the case at bar, that he make a showing of merit as a condition to the granting of leave. Defendant here is in the same position in Michigan

---

[5] General Code of Ohio, § 1512.

as Burns was in Ohio. *Burns* cannot be distinguished from the case which we are now considering because it concerned payment of a fee rather than denial of a transcript as a bar to appeal. The United States Supreme Court decided the fee question in *Burns* solely and squarely on the right-to-transcript rationale of *Griffin.* It is obvious, therefore, that the same reasoning applies regardless of the method by which an indigent defendant is barred from access to appellate review.

Clearly, in the light of *Burns* and *Griffin,* we cannot sustain plaintiff's claim that defendant's right to *a transcript at public expense* was lost by his failure to take a timely appeal as of right and that he has no right to a transcript for use in seeking leave to take a delayed appeal which is discretionary.

In another of the *Griffin* line of cases which involved payment of a statutory fee by an indigent defendant, *Smith* v. *Bennett* (1961), 365 US 708, 709 (81 S Ct 895, 6 L Ed 2d 39), the Court continued to adhere to the right-to-transcript reasoning of *Griffin* when it stated:

"We hold that to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws."

For the first time the Court in that case extended the *Griffin* rationale to collateral proceedings. The state of Iowa, in anticipation of the rule in *Griffin,* had provided by statute for appeals by indigent defendants without prior payment of filing fees and for transcripts to be provided at public expense. In *Smith* v. *Bennett,* the state refused to extend the statutory benefits to a prisoner filing a petition for a writ of *habeas corpus* in a state court. In attempt-

ing to distinguish *Griffin* and *Burns,* the state claimed that

"Those cases 'were concerned with the rights of a convicted criminal seeking to make a direct attack upon his conviction by appeal     *   *   *   .' *Habeas corpus,* on the other hand, is not an attack on the conviction but on the validity of the detention and is, therefore, a collateral proceeding."

The United States Supreme Court, not pausing to "quibble" as to the context in which the question arose said (p 712):

"The availability of a procedure to regain liberty lost through criminal process cannot be made contingent upon a choice of labels."

After a discussion of the sanctity of the writ of *habeas corpus,* the Court said (p 713):

"When an equivalent right is granted by a state, financial hurdles must not be permitted to condition its exercise."

*Lane* v. *Brown* (1963), 372 US 477 (83 S Ct 768, 9 L Ed 2d 892), dealt with the denial of an indigent's request for a transcript of a *coram nobis* hearing, the denial of which was being appealed by the indigent defendant. The Court reiterated its holding in *Griffin* and *Burns* that once a state chooses to establish an appellate procedure it cannot foreclose indigents from *any phase* of that procedure because of their poverty. The Court restated its holdings in former cases that the *Griffin* rule is not restricted to direct appeals but applies to all post-conviction proceedings, both direct and collateral (pp 484, 485):

"The present case falls clearly within the area staked out by the Court's decisions in *Griffin, Burns, Smith,* and *Eskridge.* To be sure, this case does not involve, as did *Griffin,* a direct appeal from a

criminal conviction, but *Smith* makes clear that the *Griffin* principle also applies to state collateral proceedings, and *Burns* leaves no doubt that the principle applies even though the State has already provided one review on the merits."

In *Long* v. *District Court of Iowa* (1966), 385 US 192 (87 S Ct 362, 17 L Ed 2d 290), defendant filed in a state court a petition for writ of *habeas corpus* which was denied. Defendant then applied to the district court for appointment of counsel and for a free transcript of the *habeas corpus* proceedings for use on appeal of the denial. The district court denied the motions for counsel and transcript on the ground that "*habeas corpus* being a civil action there is no provision in the law for the furnishing of a transcript without the payment of fee, or for the appointment of counsel." In considering this demand, the Supreme Court said (p 194):

"The judgment below must be reversed. The State properly concedes that under our decisions in *Smith* v. *Bennett* [1961], 365 US 708 [81 S Ct 895, 6 L Ed 2d 39], and *Lane* v. *Brown* [1963], 372 US 477 [83 S Ct 768, 9 L Ed 2d 892] 'to interpose any financial consideration between an indigent prisoner of the state and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws.' *Smith* v. *Bennett, supra,* 365 US at 709 (81 S Ct 896, 6 L Ed 2d 40). We specifically held in *Smith* that having established a post-conviction procedure, a state cannot condition its availability to an indigent upon any financial consideration. And we held in *Lane* that the same rule applies to protect an indigent against a financial obstacle to the exercise of a state-created right to appeal from an adverse decision in a post-conviction proceeding.

"In *Lane* v. *Brown, supra,* at 483, the Court reaffirmed the fundamental principle of *Griffin* v.

*Illinois* (1956), 351 US 12, 19 (76 S Ct 585, 100 L Ed
891, 55 ALR2d 1055), that 'Destitute defendants
must be afforded as adequate appellate review as
defendants who have money enough to buy tran-
scripts.' The Court in *Lane* went on to observe
that *Smith* had established 'that these principles
were not to be limited to direct appeals from crim-
inal convictions, but extended alike to state post-
conviction proceedings.' "

Thus, the United States Supreme Court in *Lane*
and *Long* has extended the *Griffin* rule far beyond
the holding that an indigent defendant is entitled
to a transcript of the trial court proceedings leading
to his conviction. The Court in *Lane* and *Long* held
that an indigent is entitled to transcripts of hearing
in collateral post-conviction proceedings for use in
appeal from the denial of defendant's petition there-
in. Thus, under the holdings of the Court in those
cases, an indigent defendant is entitled not only to
a transcript of the trial court proceedings which
led to his conviction, but also is entitled to tran-
scripts of post-conviction proceedings, both direct
and collateral, when he appeals from denials of his
petitions in such post-conviction proceedings. The
Court has clearly and firmly held that denial of free
transcripts of hearings in collateral post-conviction
proceedings is a denial of equal protection of the
laws. These decisions have rigidly adhered to the
initial holding in *Griffin* that, although there is no
constitutional requirement that a state provide any
form of appellate review of a conviction, once *any*
appellate or post-conviction proceeding is estab-
lished, an indigent may not be foreclosed from *any*
*phase* thereof because of his poverty.

The decision in *Gardner* v. *California* (1969), 393
US 367, 370 (89 S Ct 580, 21 L Ed 2d 601), indicates
that so long as there is any appellate or post-convic-
tion route open by which an indigent convict may

obtain his liberty, he is entitled to transcripts for use in pursuing that end.

"So long as this system of repeated hearings exists and so long as transcripts are available for preparation of appellate hearings in *habeas corpus* cases, they may not be furnished those who can afford them and denied those who are paupers."

The Court in that case discussed the indigent's practical need for a transcript when proceeding *in propria persona* (pp 369, 370):

"It is argued that since petitioner attended the hearing in the superior court, he can draw on his memory in preparing his application to the appellate court. And that court, if troubled, can always obtain the transcript from the lower court. But we deal with an adversary system where the initiative rests with the moving party. Without a transcript the petitioner, as he prepared his application to the appellate court, would have only his own lay memory of what transpired before the superior court. For an effective presentation of his case he would need the findings of the superior court and the evidence that had been weighed and rejected in order to present his case in the most favorable light. Certainly a lawyer, accustomed to precise points of law and nuances in testimony, would be lost without such a transcript, save perhaps for the unusual and exceptional case. The lawyer, having lost below, would be conscious of the skepticism that prevails above when a second hearing is sought and would as sorely need the transcript in petitioning for a hearing before the appellate court as he would if the merits of an appeal were at stake. A layman hence needs the transcript even more.

"It is said that the appellate court may send for the transcript and deduce from it whether there is merit in this new application for another hearing. That philosophy would make the appellate tribunal *parens patriae* of the indigent *habeas corpus* liti-

gant. If that would suffice for appellate hearings in *habeas corpus,* why not in review of cases on appeal? Since our system is an adversary one, a petitioner carries the burden of convincing the appellate court that the hearing before the lower court was either inadequate or that the legal conclusions from the facts deduced were erroneous. A transcript is therefore the obvious starting point for those who try to make out a case for a second hearing. The state can hardly contend that a transcript is irrelevant to the second hearing, where it specifically provides one, upon request, to the appellate court and the state attorney."

Although the above discussion would not, *per se,* be determinative of defendant's rights, it is of particular interest in this case. It would be apparent from defendant's brief, even if not known to us, that defendant in seeking leave to appeal has nothing to work from except his own recollection of the trial court proceedings. On the other hand, the prosecuting attorney, in his brief in opposition to the granting of a transcript to defendant, quotes liberally from the same transcript which he seeks to deny to defendant.

In *Roberts* v. *LaVallee* (1967), 389 US 40 (88 S Ct 194, 19 L Ed 2d 41), the Court extended the *Griffin* rule to require that a transcript of a preliminary examination be furnished to an indigent defendant for use on appeal, and in *Williams* v. *Oklahoma City* (1969), 395 US 458 (89 S Ct 1818, 23 L Ed 2d 440), the rule applied to appeals from convictions on charges of petty offenses.

Admittedly, there is no decision of the United States Supreme Court, nor of either appellate court of this state, which specifically deals with the rights of an indigent seeking leave to take a delayed appeal from his conviction under the provisions of GCR 1963, 803.3, and GCR 1963, 806.4(2), or under any

like provisions in any other state. This is undoubtedly because the Michigan provision for delayed appeal is *sui generis*. However, considering the wide range of post-conviction situations in which the United States Supreme Court had held that denial of a transcript constitutes denial of equal protection of the laws, we cannot say that the Michigan provision for delayed appeal does not come within the ambit of the *Griffin* principle.

Michigan by court rule has provided that one convicted of a crime who has failed to take a timely appeal as of right from his conviction may, upon a showing of merit and a lack of culpable negligence in delay, obtain leave to take a delayed appeal from his conviction.

Thus, Michigan has provided this method of appellate review which is available to rich and poor alike. To deny an indigent the opportunity to regain his liberty, through this means of direct appellate review, would be denial of equal protection of the laws.

To hold that the Michigan provision for delayed appeal does not come within the principles enunciated in *Griffin* and its progeny would be an unreasoned distinction within the meaning in *Williams* v. *Oklahoma City, supra,* where the United States Supreme Court said that the states are not required to establish avenues of appellate review, but that "once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts".

A further word should be said as to the prosecuting attorney's claim that defendant, by failing to take a timely appeal as of right from his conviction, has waived his right to a transcript at public expense for use in preparing an application for leave to take a delayed appeal. The Michigan Supreme Court in

*People* v. *McKinley* (1970), 383 Mich 529, 536, stated clearly the strong presumption against waiver of basic rights.

"Waiver, as that term has been repeatedly defined by this Court, is the intentional relinquishment or abandonment of a known right. See *Welling* v. *Dave's Cut Rate Drugs, Inc.* (1961), 362 Mich 389; *Book Furniture Company* v. *Chance* (1958), 352 Mich 521; *Maxey* v. *Proctor* (1955), 343 Mich 453; *Kelly* v. *Allegan Circuit Judge* (1969), 382 Mich 425. The Court indulges every reasonable presumption against waiver of constitutional rights. (See *Johnson* v. *Zerbst* [1938], 304 US 458 [58 S Ct 1019, 82 L Ed 1461].)"

In light of the above, waiver of so basic a right cannot be so lightly presumed.

It cannot be disputed that defendant has, by reason of his failure to take a timely appeal, lost his right to an appeal as of right. However, Michigan has provided an additional opportunity for review of convictions by means of an application for delayed appeal. There certainly can be no presumption that failure to take a timely appeal as of right resulted in the loss of any rights incident to the right to delayed appeal.

We conclude, therefore, that the trial judge erred in denying defendant the trial court transcript and records which he requested. Superintending control is granted and the trial court is ordered to furnish defendant with the records and transcripts requested.

T. M. BURNS, J., concurred.

HOLBROOK, J. (*dissenting*). This writer accepts the counter-statement of issue involved which is stated by the people as follows:

"Is a convicted criminal defendant entitled to free copies of the circuit court records of his case where the trial court at sentencing informed him in open court as well as in writing of his constitutional right to appellate review; free counsel and records to perfect such appeal if indigent, and that such petition must be filed with the trial court within 60 days of sentencing to be timely, and failure to timely file would result in loss of the right to timely appeal, free counsel and records, and appellant stated that he understood those rights, but where defendant files his petition for free records 90 days after sentencing, but fails to show that the delay in filing was not due to his culpable negligence, and fails to show that he has a meritorious basis for either post-conviction motions or an appeal?"

Defendant was charged in the Genesee County prosecuting attorney's information with unlawfully driving away an automobile. MCLA § 750.413 (Stat Ann 1954 Rev § 28.645).

On June 20, 1969, defendant, who was represented by counsel, appeared before the Honorable Stewart A. Newblatt for the specific purpose of withdrawing his previously entered not guilty plea and entering a plea of guilty to the charge contained in the information. The guilty plea of defendant was tendered by defendant and accepted by the trial court in conformity with the requirements of GCR 1963, 785-.3(2).

On August 5, 1969, defendant, with his counsel, appeared before the trial court for sentencing. The sentence imposed was for imprisonment in the state penitentiary for not less than four and one-half nor more than five years.

At the conclusion of sentencing, defendant was advised of his constitutional right to appellate review. The reporter's transcript reflects the following:

"*The Court:* It's my duty to inform you that you have a constitutional right to appeal your conviction. If you're financially unable to hire an attorney to perfect that appeal, the court would appoint an attorney for you and would furnish that attorney with such portions of the record of these proceedings as that attorney would require to prepare any post-conviction motions or to take an appeal in your behalf.

"I further advise you that if you claim financial inability to hire your own attorney, and you want the court to appoint an attorney for you, you should make that request to the court within sixty days from today.

"I will give you some forms for you to fill out. To do that, you should fill out these forms, sign them under oath and return them to me within sixty days or it will have three consequences. First, you will lose your right to appeal; secondly, you lose your right to have an attorney appointed at public expense and; thirdly, you will lose your right to have a transcript of these proceedings furnished to you at public expense. Do you understand that, Mr. Cross?

"*The Defendant:* Yes, sir.

"*The Court:* I will give you the forms at this time and ask that you sign the top one as a receipt, please.

(*Whereupon defendant signed receipt for above-mentioned form*)

"Thank you, Mr. Cross. You may be seated."

In a petition dated November 6, 1969, defendant, *in propria persona,* requested that the trial court enter an order directing the Genesee County Clerk to furnish him with ALL the transcripts and records in his case free of charge because of his alleged indigent status.

Defendant's petition was brought on for hearing on November 17, 1969, before the Honorable Elza H. Papp (alternate of Judge Stewart A. Newblatt).

Defendant's request was denied by the trial court in its order dated November 17, 1969.

The denial was based on essentially these grounds: First, defendant had been advised by the sentencing judge of his constitutional right to appellate review; second, defendant had been advised of his right to appellate counsel at public expense and free records; and that requests for the same were to be made to the court within sixty days of sentencing on a form which had been furnished to defendant at his sentencing; third, defendant was informed that failure to timely petition the trial court would result in the loss of the right to timely appeal, free appellate counsel, and free records. Thus, defendant's tardy petition in this cause, after being advised of his rights at sentencing and the applicable time limitations, and without a showing that the delay in filing his petition was not due to defendant's culpable negligence, appropriately called for denial of his requests.

Defendant now appeals to this Court filing a petition for writ of *habeas corpus*, which is treated as an application for leave to appeal. It appears that defendant's contention is that the trial court's denial of his petition for free records should be reversed.

GCR 1963, 803.3 provides as follows:

"Delayed Appeal. After expiration of the period for timely appeal, the Court of Appeals may, in its discretion, grant leave to appeal from any order or judgment from which timely appeal would have been available either as of right or by leave, upon showing, supported by affidavit, that there is merit in the grounds for appeal and that the delay was not due to appellant's culpable negligence."

GCR 1963, 806.4(2) provides in part:

"Where timely appeal would have been of right, application for delayed appeal need not be accom-

panied by settled statement of facts but shall affirmatively show, by statement of facts and brief, that there is merit in the claim of appeal and, by affidavit of facts, that the delay was not due to appellant's culpable negligence."

Defendant has not shown any meritorious basis for an appeal nor has he shown why he waited over ninety days from the time of his sentence to file a petition for the free records because of his alleged indigent status.

Defendant bases his claim for relief on the premise that a person who is able to purchase a transcript should be in no better position than an indigent person and that the equal protection clause of the United States Constitution requires the Court to furnish to him at this time, without cost, a copy of the records and transcript. That he was entitled to such free transcript and records is unquestioned provided he had followed the General Court Rules of the State of Michigan. This he did not do.

In *United States* v. *Shoaf* (CA 4, 1964), 341 F2d 832, Judge Haynsworth said that an indigent defendant is not entitled to a free transcript for a keepsake nor, with no showing of need, to comb such record in hope of discovering some flaw.

In *State* v. *Brazell* (1968), 15 Ohio App 2d 104, 108 (239 NE2d 125), the Court in part stated:

"Defendant claims that he is entitled to a transcript of the proceedings of his original trial at the taxpayers' expense. To enable him to receive such transcript, he either must be within rule at the time the request is made or have a motion for leave to appeal granted. *State ex rel. Catlino* v. *Clerk of Common Pleas Court* (1967), 9 Ohio St 2d 101 (224 NE2d 130). Inasmuch as defendant does not now have an appeal pending, he, therefore, is not entitled to copies of the records furnished him at state expense."

See also *People* v. *Rivera* (1969), 60 Misc 2d 414 (303 NYS2d 1); *Williams* v. *Peyton* (WD Va, 1969), 297 F Supp 857.

Absent a showing of a meritorious basis for an appeal and a satisfactory explanation showing that the delay was not due to defendant's culpable negligence, it appears to this writer that defendant is not entitled to have furnished him free of charge the records and transcript concerning his conviction in the trial court. *People* v. *Gorka* (1969), 381 Mich 515; *Jensen* v. *Menominee Circuit Judge* (1969), 382 Mich 535; *People* v. *Berry* (1970), 384 Mich 270; and *Calhoun* v. *Macomb Circuit Judge* (1968), 15 Mich App 416.

Defendant having not complied with the General Court Rules nor having cited any case in the United States Supreme Court directly in point requiring the state to furnish transcripts and records to a defendant under similar circumstances, I would rule as did the trial court and affirm.