*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

WILLIAM MICHAEL BADGER, JR.,

Defendant-Appellant.

UNPUBLISHED
June 17, 2026
2:58 PM

No. 371777
Lenawee Circuit Court
LC No. 2021-020463-FH

Before: BAZZI, P.J., and RICK and MALDONADO, JJ.

PER CURIAM.

Defendant, William Badger, Jr., appeals by right his jury conviction of operating while intoxicated causing death, MCL 257.625, and reckless driving causing death, MCL 257.626. The trial court sentenced defendant to serve 54 months to 15 years in prison for each conviction, with the sentences to run concurrently and with credit for 170 days served in jail. Defendant's appellate counsel argues that there was insufficient evidence supporting the "willful and wanton" element of the reckless driving conviction, that defendant's trial counsel's assistance was ineffective when he failed to object to the prosecutor's repeated references to defendant's refusal to submit to a blood draw, and that defendant's within-guidelines sentences are unreasonable.

Defendant also filed a Standard 4 supplemental brief *in propria persona* in accordance with Administrative Order 2004-6. In his Standard 4 brief, defendant claims that his trial counsel was ineffective when he advised defendant to decline the prosecutor's plea offer. Defendant further argues that his convictions are void because he was charged on information without a grand jury indictment, in violation of his Fifth and Fourteenth Amendment rights to due process. We affirm.

## I. BACKGROUND

This case arises from a fatal car accident in May 2021, in which defendant was driving his neighbor's convertible, lost control, and killed his passenger, David Campell. David and his wife, Karen Campbell, lived on defendant's street, and defendant would often visit them. On the day of the accident, defendant visited the Campbells, and he and David each had a glass of Jameson whiskey. Karen showed defendant her new car, a 2003 Lexus convertible. It was a clear, sunny

day, and defendant offered to wax Karen's car, commenting that if it was his, he would be "driving the shit out of it today." While defendant waxed Karen's car, David prepared defendant a second drink, which Karen kicked over. After defendant finished waxing the car, David prepared defendant a third drink, which defendant kicked over. Karen was not sure if defendant consumed any of the second or third drinks. Nevertheless, at that point, the whiskey was gone, and defendant offered to drive to the liquor store to buy more. Karen knew that defendant admired her car, so she suggested that defendant drive it to the liquor store, with David riding along. On defendant and David's drive back from the liquor store, defendant lost control of the convertible. The car flipped over and landed in a ditch. David broke his neck and died at the scene. Defendant was transported by ambulance to the Toledo Hospital in Ohio.[1]

When defendant arrived at the hospital, the medical staff drew his blood and screened it for drugs. Lenawee County Sheriff's Deputy William Warner interviewed defendant at the hospital, which was captured on body camera footage. In the recorded interview, defendant admitted to driving 65 miles per hour and to drinking a shot of whiskey before driving. He declined Deputy Warner's request for a blood draw, stating, "No disrespect, I plead the fifth on that." Law enforcement then subpoenaed the results of the hospital's blood test, which revealed that defendant's ethanol level, or blood alcohol content (BAC), was 0.18 grams of alcohol per 100 milliliters of blood.[2]

Defendant was charged as previously noted and pleaded not guilty. He also declined the prosecutor's plea offer to plead guilty to either one of the charges and serve one year in jail; so, the case proceeded to a jury trial. Prior to trial, defense counsel attempted to exclude the results of the BAC test unless the prosecutor presented an expert witness to testify about the result's validity and reliability. Following an evidentiary hearing, the trial court determined that the BAC test results were admissible under MCL 257.625a(6)(e)[3] and that expert testimony was not necessary. At trial, defense counsel again attempted to exclude the results of the hospital's BAC test results on the grounds that the prosecutor failed to lay a proper foundation. The trial court overruled defendant's objection and admitted the test results.

---

[1] This incident took place in Lenawee County, Michigan, which shares a border with Ohio.

[2] The unlawful BAC level is 0.08. MCL 257.625(1)(b).

[3] MCL 257.625a(6)(e) states in relevant part:

> If, after an accident, the driver of a vehicle involved in the accident is transported to a medical facility and a sample of the driver's blood is withdrawn at that time for medical treatment, the results of a chemical analysis of that sample are admissible in any civil or criminal proceeding to show the amount of alcohol . . . in the person's blood at the time alleged, regardless of whether the person had been offered or had refused a chemical test. The medical facility or person performing the chemical analysis shall disclose the results of the analysis to a prosecuting attorney who requests the results for use in a criminal prosecution as provided in this subdivision.

Throughout the four-day trial, the prosecutor's witnesses included law enforcement; emergency responders, who treated defendant at the crash site; hospital workers, who treated defendant at the hospital; witnesses to the crash; and crash site investigators. Witnesses of defendant's behavior before the crash testified that he drank alcohol and that he appeared to be drunk. Witnesses of the crash itself testified that defendant was driving excessively fast and that he neglected to stop at a clearly marked stop sign. Witnesses who interacted with defendant after the crash testified that defendant admitted to drinking alcohol and driving in excess of the speed limit, which was set at 55 miles per hour.

The jury convicted defendant of both charges, and the trial court sentenced him as described earlier. This appeal followed.

## II. RECKLESS DRIVING CAUSING DEATH

Defendant argues that the prosecution failed to present sufficient evidence of reckless driving and that if this conviction is reversed, defendant is also entitled to resentencing. We disagree.

We review a challenge to the sufficiency of the evidence by reviewing the evidence de novo "in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009). "But more importantly, '[t]he standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict.' " *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Further, the prosecutor does not have to negate every reasonable theory consistent with innocence—the prosecutor is bound only "to prove the elements of the crime beyond a reasonable doubt" and "in the face of whatever contradictory evidence the defendant may provide." *Nowack*, 462 Mich at 400 (quotation marks and citation omitted).

"Due process requires that a prosecutor introduce evidence sufficient to justify a trier of fact to conclude that the defendant is guilty beyond a reasonable doubt." *People v Tombs*, 260 Mich App 201, 206-207; 679 NW2d 77 (2003), aff'd 472 Mich 446 (2005). In this case, defendant was charged with reckless driving causing death under MCL 257.626, which provides in relevant part:

> (2) Except as otherwise provided in this section, a person who operates a vehicle upon a highway . . . in willful or wanton disregard for the safety of persons or property is guilty of a misdemeanor . . . .
>
> * * *
>
> (4) Beginning October 31, 2010, a person who operates a vehicle in violation of subsection (2) and by the operation of that vehicle causes the death of another person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both.

Thus, the prosecutor was required to prove three elements beyond a reasonable doubt: (1) that defendant drove a motor vehicle on a highway; (2) that defendant drove the motor vehicle in "willful or wanton disregard for the safety of persons or property"; and (3) that defendant's operation of the vehicle caused the victim's death. *People v Fredell*, 516 Mich 1, 12; 33 NW3d 320 (2024) (quotation marks and citation omitted).

On appeal, defendant only attacks the sufficiency of the evidence regarding the second element. To establish that defendant drove recklessly—i.e., "in willful or wanton disregard for the safety of persons or property," MCL 257.626(2)—"it is not enough to show carelessness or ordinary negligence." *People v Otto*, 348 Mich App 221, 234; 18 NW3d 336 (2023) (quotation marks and citation omitted). Rather, the prosecution must prove that defendant " 'knowingly disregard[ed] the possible risks to the safety of people or property.' " *Id*. at 236, quoting *People v Carll*, 322 Mich App 690, 695; 915 NW2d 387 (2018).

"Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Head*, 323 Mich App 526, 532; 917 NW2d 752 (2018) (quotation marks and citation omitted). "Minimal circumstantial evidence is sufficient to prove an actor's state of mind." *People v Fennell*, 260 Mich App 261, 270-271; 677 NW2d 66 (2004). "It is the province of the jury to determine questions of fact and assess the credibility of witnesses. . . ." *People v Odom*, 276 Mich App 407, 419; 740 NW2d 557 (2007) (quotation marks and citation omitted). "A jury is free to believe or disbelieve, in whole or in part, any of the evidence presented." *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012) (quotation marks, citation, and brackets omitted).

In prior cases, this Court has determined that a prosecutor presents sufficient evidence of reckless driving when there was evidence that the "defendant purposefully drove through a stop sign at high speed without any attempt to brake and that he might have even accelerated into the intersection." *Carll*, 322 Mich App at 698. On the basis of those facts, "[a] jury could fairly conclude that defendant's actions were willful or that they were done with wanton disregard of the potential consequences, i.e., death and serious injury." *Id*.

In this case, the prosecutor presented a plethora of evidence that defendant was speeding and neglected to stop at a stop sign at the intersection of Lipp Highway and Ottawa Lake Road. Arguably, the most reliable evidence that defendant was driving in excess of the speed limit and too fast for road conditions came from Corporal Keith Gorney of the Lenawee County Sheriff's Department, who testified as an expert in accident reconstruction. Corporal Gorney analyzed the convertible's black box and determined that the vehicle was traveling at 63 miles per hour five seconds before impact. The posted speed limit on Lipp Highway is 55 miles per hour. Corporal Gorney also testified that, on the basis of his investigation, the vehicle was traveling too fast for the road conditions. Along the same lines, Lenawee County Sheriff's Deputy Hall confirmed that there were no signs of skid marks on the paved portion of Lipp Highway prior to the stop sign, and Lenawee County Officer Rogers testified that the vehicle appeared to be fish-tailing and left marks on the road, such that "you can see the continuous movement of that vehicle very clearly."

The prosecution also presented two eyewitnesses to the accident, Kasondra Robinson and Steven Vanderpool. The pair lived near the site of the crash and happened to be outside installing a mailbox at the time of the accident. Robinson testified that she heard "an acceleration" and then

-4-

saw a car "traveling at a very high rate of speed" south along Lipp Highway. According to Robinson, the car was traveling so fast that it was a "blur." She estimated the car's speed to be 80 to 90 miles per hour. The car "flew right through the stop sign" at the intersection without stopping. Vanderpool's testimony was very similar. He heard the car before he saw it. He had "worked on cars all [his] life," and to him, it sounded as if the car was "just floored." Vanderpool testified that the car did not slow down at all as it went through the intersection. Both Robinson and Vanderpool testified that the stop sign was clearly visible.

Finally, the jury heard evidence that defendant admitted to speeding before the accident. First, Lieutenant Matthew Dunbar, a firefighter paramedic who treated defendant at the scene of the crash and rode with him in the ambulance to the hospital, testified that defendant said that he was driving approximately 65 miles per hour. Additionally, Dr. Haley Hrestak, who treated defendant when he arrived at the hospital, testified that defendant said that he was driving 65 miles per hour and that his car flipped over. Further, body camera footage of defendant in the hospital after the crash showed defendant telling Deputy Warner that he had been driving about 65 miles per hour. This wealth of evidence supports the conclusion that defendant was speeding at the time of the accident, which, although insufficient on its own, is an important factor that can support a conviction of reckless driving under MCL 257.626(4). See *Carll*, 322 Mich App at 698.

This Court also has determined that evidence of intoxication is a proper consideration in determining whether someone drove recklessly, particularly because alcohol affects perception and is relevant to whether the defendant "proceeded in the face of known danger." See *People v Marshall*, 74 Mich App 523, 528; 255 NW2d 351 (1977).

In this case, the prosecutor presented extensive evidence that defendant had been drinking before the accident and that he was intoxicated at the time of the crash. First, the jury saw defendant's BAC test results, which revealed that his BAC level after the accident was 0.18— more than twice the legal limit.[4] Witnesses also testified that defendant was drinking alcohol shortly before he drove Karen's car. Karen testified that David poured defendant a glass of whiskey for him to drink while he waxed Karen's car. Karen also explained that two more glasses of whiskey were presented to defendant, though it is unclear how much he drank from those glasses because each was kicked over.

Additionally, Karen's neighbor, Harold Miller, and his daughter, Danielle McKeever, testified that they saw defendant drinking while he was in the Campbells' yard in the hour before they heard the sirens from defendant's crash. Miller could not confirm what defendant was drinking, but McKeever believed that it was "some kind of alcohol[ic] beverage" because she saw a box that she thought contained alcohol by defendant's chair. Both Miller and McKeever testified that defendant was slurring his words. McKeever also testified that defendant's voice sounded "muffled, a little, like, he was a little intoxicated."

And, similar to defendant's admission of speeding, the jury also heard defendant admit to drinking. Body camera footage of defendant in the hospital showed defendant admitting to Deputy

---

[4] Karen corroborated these results when she testified that defendant allowed her to view his medical records online, and the BAC result was 0.18.

Warner he had taken a shot of whiskey before driving. Likewise, the paramedics who treated defendant at the scene of the crash both testified that defendant admitted drinking a few shots of whiskey before driving. Finally, defendant purchased three bottles of liquor at the liquor store right before getting back into the convertible for the fatal crash.

Despite this evidence, defendant argues that the prosecution failed to carry its burden regarding reckless driving because (1) the medical examiner determined that David's cause of death was accidental, (2) Deputy Hall was not qualified to testify about defendant's speed at the time of the crash, and (3) even if defendant was speeding, such an infraction is a civil misdemeanor, not substantial evidence of reckless driving.

None of these arguments have merit. First, it is true that the medical examiner classified David's manner of death as accidental. More specifically, the autopsy report indicated that David's "[d]eath was caused by a high neck fracture received as the passenger in a convertible auto rollover into a drainage ditch. . . ." However, neither the autopsy classification nor the description precludes the jury from determining that defendant's reckless driving was the factual and legal cause of the accident, which caused David's death.

Second, although Deputy Hall's testimony regarding defendant's speed at the time of the crash may be problematic, the testimony does not require reversal. A police officer may provide a jury with an estimate of a defendant's speed, provided that the officer is testifying as a lay witness who had the opportunity to observe the speed. See MRE 701 (limiting lay testimony to that which is "rationally based on the witness's perception"); see also *People v Zimmerman*, 385 Mich 417, 439; 189 NW2d 259 (1971) (noting that "opinion testimony of lay witnesses with regard to speed has repeatedly been held to be admissible . . . ."). Alternatively, an officer may testify as an expert "by knowledge, skill, experience, training, or education" when it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. [MRE 702.]

In this case, Deputy Hall testified that he estimated the speed of the vehicle was about 70 miles per hour. However, his estimate was not based on his personal observation of the car before the crash; instead, Deputy Hall testified about his background and training in accident investigation and accident reconstruction and confirmed that he was a member of the Lenawee County accident investigation team. He also explained the measurements and mathematics that led to his estimate. Accordingly, his testimony was based on specialized training and knowledge, so the prosecutor should have moved to have Deputy Hall qualified as an expert before he gave his opinion about defendant's estimated speed. See MRE 702.

However, Deputy Hall's estimation of the speed was just one of the many pieces of similar evidence. Robinson testified that defendant was driving 80 to 90 miles per hour. Defendant

-6-

himself repeatedly admitted to driving 65 miles per hour. And Corporal Gorney testified—as an expert—that the black box indicated that defendant was driving 63 miles per hour a few seconds before impact. No matter which evidence the jury found the most credible, defendant was undoubtably speeding at the time of the accident, and the prosecutor presented multiple pieces of evidence to that effect. Notably, on appeal, defendant does not dispute that he was speeding. Therefore, despite that Deputy Hall provided an unqualified estimate of defendant's speed, defendant has not established that this testimony was prejudicial.

Which leads to defendant's final argument that speeding is insufficient to support a charge of reckless driving causing death. Unfortunately for defendant, speeding is not the only factor in this case. There is also the fact that defendant expressed wanting to test the car and intentionally "opened it up." In doing so, he failed to stop at a clearly posted stop sign and then deliberately drove in excess of the speed limit on a gravel road. Most importantly, there was the fact that defendant had been drinking before he drove and was intoxicated at the time of the accident. Taken together, these factors certainly would allow a jury to reasonably conclude that defendant drove with willful or wanton disregard for David's safety. See *Carll*, 322 Mich App at 698. Accordingly, defendant has not established that the jury verdict should be vacated. Likewise, he is also not entitled to resentencing.

## III. DEFENDANT'S REFUSAL TO SUBMIT TO A BLOOD DRAW

Defendant argues that the prosecutor erred when he referred to defendant's refusal to submit to a blood draw and that defense counsel was ineffective for failing to object. We disagree.

"To preserve a claim of prosecutorial error, a defendant must timely and specifically challenge the prosecutor's statements or conduct." *People v Thurmond*, 348 Mich App 715, 735; 20 NW3d 311 (2023). Defendant did not object to the admission of the video or any of the prosecutor's statements being challenged on appeal. Therefore, the issue of whether any prosecutorial error occurred is unpreserved.

In addition, a defendant preserves a claim of ineffective assistance of counsel by moving for a new trial or an evidentiary hearing to develop the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). However, a defendant may assert a claim of ineffective assistance involving facts of record without regard to whether he or she has moved for a new trial or an evidentiary hearing. See *People v Sabin* (*On Second Remand*), 242 Mich App 656, 658-659; 620 NW2d 19 (2000). In this case, defendant did not move for a new trial or an evidentiary hearing. Therefore, this issue is preserved only to the extent that defendant's claim involves facts of record. See *id*.

A general claim that prosecutorial error violated the defendant's due process right to a fair trial does not present a constitutional error. See *People v Blackmon*, 280 Mich App 253, 261, 269; 761 NW2d 172 (2008). Unpreserved claims of prosecutorial error are reviewed for plain error affecting substantial rights. *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020). To avoid forfeiture under the plain-error rule, a party must establish three things:

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. To show that a defendant's substantial rights

were affected, there must be a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*Id*. at 88-89 (quotation marks and citations omitted)].

Generally, whether a defendant had effective assistance of counsel is a mixed question of fact and law. *Heft*, 299 Mich App at 80. However, if the trial court did not hold an evidentiary hearing on this issue, then there are no factual findings to which this Court must defer. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012). In such cases, this Court reviews de novo whether a particular act or omission fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant. *Id.* at 19-20.

Prosecutors have wide latitude to make arguments on the basis of the evidence presented and inferences made from that evidence. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). "Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). When a defendant raises a claim of prosecutorial error on the basis of remarks made at trial, this Court must examine the record and evaluate a prosecutor's conduct in context to determine whether the defendant received a fair and impartial trial. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). Under the plain-error standard, this Court will not find error requiring reversal "if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *People v Aikens*, ___ Mich App ___, ___; ___ NW2d ___ (2025) (Docket No. 368187); slip op at 3 (quotation marks and citation omitted). "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements and jurors are presumed to follow their instructions." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) (citations omitted).

The Constitutions of the United States and Michigan each guarantee a defendant the right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To prove that counsel provided ineffective assistance, a defendant must demonstrate that (1) " 'counsel's representation fell below an objective standard of reasonableness,' " and (2) the defendant was prejudiced, which means "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A defendant must also show that the result that did occur was fundamentally unfair or unreliable." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted). Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Counsel is not ineffective for failing to make a meritless argument or raise a futile objection. *People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021).

In this case, defendant argues on appeal that the prosecutor erred when he sought the admission of the body camera video depicting defendant's refusal to submit to law enforcement's request for a blood draw. However, such a finding may not be based on a prosecutor's good-faith effort to admit evidence. See *People v Brown*, 294 Mich App 377, 383; 811 NW2d 531 (2011). Defendant does not expressly point to any bad faith on the part of the prosecutor seeking to admit the video. Defendant's only potential argument of bad faith is his general assertion that the prosecutor used the video as substantive evidence of defendant's guilt, rather than for purposes of impeachment. But the record does not support such a conclusion.

Under MCL 257.625a(9), a defendant's refusal to submit to a blood test is admissible in a criminal prosecution for reckless driving causing death "only to show that a test was offered to the defendant, but not as evidence in determining the defendant's innocence or guilt." The statute further requires that "[t]he jury must be instructed accordingly." *Id*. In this case, as will be discussed, the portion of the video depicting defendant's refusal to submit to a blood draw was properly used only to show that defendant was offered such a test. Moreover, the trial court properly instructed the jury on this point.

There is no exchange on the record between the parties prior to the admission of the video to indicate how the prosecutor intended to use it. However, the prosecutor's question immediately before playing the video was an inquiry as to why Deputy Warner had a conversation with defendant in the hospital, to which Deputy Warner responded that he wanted defendant to tell him, "[W]hat happened." The prosecutor's questions immediately after playing the video were about why Deputy Warner sought the hospital's blood test results and how he obtained them.

To that end, Deputy Warner testified that he did not know how to address a situation in which a criminal suspect was hospitalized out-of-state. In particular, he did not know whether he needed a warrant to obtain a blood sample or whether a Michigan warrant would be valid in Ohio. Deputy Warner further explained that his captain asked him to determine if the hospital had obtained a blood sample. After the hospital confirmed that it had procured a sample, Deputy Warner's captain explained that he could use a subpoena to obtain it. Neither the prosecutor nor Deputy Warner mentioned the fact that defendant refused to submit to Warner's request for a blood test. On this record, defendant has not carried his burden of showing that the prosecutor sought the admission of the video in bad faith or for an improper purpose.

In fact, the prosecutor only asked Deputy Warner about defendant's refusal after defense counsel questioned Warner about his failure to use his state-issued blood-testing kit. Accordingly, the prosecutor's two questions about defendant's blood test refusal on redirect examination were undoubtedly an effort to clarify to the jury why Deputy Warner did not use his testing kit—that is, he did not use his kit because he offered to give defendant a test, and defendant refused.

Along the same lines, the prosecutor's comments during his rebuttal closing argument were made in response to defense counsel's closing arguments about the inaccuracy of the hospital blood test, the incompetence of Deputy Warner for not using his own test kit, and the overall inadequacy of the police investigation. Defense counsel argued that "the hospital is testing blood for medical purposes, not for legal purposes" and that "it is very reasonable for you [the jury] to infer that the hospital staff, or the EMT, or both had rubbed a fair amount of alcohol on [defendant's] veins that day." Defense counsel went on to argue:

Deputy Warner asked [defendant] if he will submit to an additional blood draw, presumably for legal purposes. And, as was his right, [defendant] refuses. Meanwhile, in his squad car, Deputy Warner has a Michigan State Police blood testing kit which contains betadine swabs that do not contain alcohol, and it contains two separate vials to collect blood specimens for legal purposes.

So, what happens next, or rather what does not happen next is entirely the fault of the Lenawee County Sheriff's Office because rather than get a search warrant from a Lenawee County judge for a possible criminal offense that would have occurred in Lenawee County, they instead choose to defer to the medical blood test.

Clearly, then, defense counsel was the first to argue in closing that defendant refused to submit to a blood draw. Defense counsel then went on to argue how Deputy Warner's handling of that refusal led to "an incredibly shoddy chain of evidence and a botched investigation."

In rebuttal, the prosecutor made the following argument with respect to defendant's refusal to submit to law enforcement's request for a blood draw:

Deputy Warner gave him an opportunity to take another test, do you remember that. And I think [defendant] said something along the lines of, no disrespect, I'd like to consult a lawyer, I'll plead the Fifth. Well, he didn't consult a lawyer that day. He could've, he could've made a phone call. He didn't. And he said the hospital already took a test, and . . . Deputy Warner said, "I'd like to have this test done." He said, "I'm going to plead the Fifth." What is the Fifth, you have the right to remain silent. He certainly wasn't remaining silent that day. He was telling what happened, he was telling how fast he went, he was telling how the accident occurred to the best of his ability and knowledge. But, you know, we've all heard, you know, I refuse to answer on the grounds that my answer's going [to] incriminate me. That really didn't apply to this situation, did it. What does apply to this situation is more along the lines of I refuse to take your test on the grounds that the results may tend to incriminate me. That's pleading the Fifth Amendment in this situation.

At the outset, the prosecutor directly states that defendant was offered a blood test, which is permissible under MCL 257.625a(9). Next, the context of the statements supports that the prosecutor is not directly stating that defendant's refusal to submit to a blood draw was evidence of his guilt. Rather the prosecutor appears to be drawing a distinction between the common use of the Fifth Amendment to remain silent and the possible use the Fifth Amendment to refuse to submit to a test offered by law enforcement. In light of defendant's own prior arguments referring to his refusal to submit to a blood test, the prosecutor's subsequent reference to the refusal in this context is not plainly erroneous. See *Brown*, 279 Mich App at 135-136.

However, to the extent that the prosecutor's statements may be interpreted to inappropriately imply that defendant's refusal was substantive evidence of his guilt, the trial court properly instructed the jury on this point. Contrary to defendant's argument on appeal, the trial court instructed the jury as follows:

> Evidence has been admitted in this that the Defendant refused to take a chemical test that was requested by a police officer. If you find that the Defendant did refuse, that evidence was admitted solely for the purpose of showing that a test was offered to the Defendant. That evidence is not evidence of guilt.

Additionally, the trial court instructed the jury that it must start with the presumption of defendant's innocence; that the prosecutor bore the evidentiary burden; that defendant had a right not to testify, and his exercise of that right should not affect the verdict in any way; and that the lawyers' questions and statements are not evidence. These clear, curative instructions are sufficient to cure any potential prejudicial effect of the prosecutor's statements. See *Unger*, 278 Mich App at 235.

In sum, the record does not support that the prosecutor's use of the video, including his few rebuttal questions and comments about defendant's refusal to submit to a blood test, were intended to be used (or actually used) as substantive evidence of defendant's guilt. Therefore, defendant has not established outcome-determinative plain error related to the prosecutor's conduct. See *Evans*, 335 Mich App at 88-89. Relatedly, because the prosecutor did not engage in misconduct, defense counsel did not provide ineffective assistance by failing to raise futile objections to the video, questions, or comments. See *Isrow*, 339 Mich App at 532.

Additionally, defendant has not met his heavy burden to overcome the presumption that his trial counsel declined to object to the video and the prosecutor's comments as part of a sound trial strategy. See *Eisen*, 296 Mich App at 329. Defense counsel used the video to confirm that Deputy Warner did not smell intoxicants when he was in the hospital room with defendant, which supported defendant's theory that he was not intoxicated at the time of the accident. And defense counsel's own questions about how Deputy Warner neglected to use his alcohol-free blood testing kit and his questions about Deputy Warner's efforts to obtain the hospital blood test results supported defendant's theory that the investigation was "missing critical evidence." Therefore, the record supports that defense counsel declined to object because Deputy Warner's response to defendant's test refusal was an important aspect of defendant's theory of the case. A defense counsel's presumptively strategic trial decisions—such as questioning witnesses and presenting arguments—should not be second-guessed on appeal. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). Moreover, a defense counsel's attempt to execute a strategy is not unsound simply because it did not work, i.e., the jury convicted defendant. See *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

Finally, assuming arguendo that defense counsel's failure to object to the prosecutor's references to defendant's refusal to submit to a blood draw was objectively unreasonable, defendant still fails to establish that this failure prejudiced defendant or changed the outcome of the trial. See *People v Evans*, 335 Mich App 76, 88-89; 966 NW2d 402 (2020). As discussed, there was ample evidence of defendant's reckless driving—the only disputed element of the only disputed conviction on appeal. Defendant does not contest that he was speeding, that he had been drinking, or that he failed to stop at a stop sign.[5] Therefore, the record does not support that defendant was prejudiced by defense counsel's decision not to object to the admission of the body

---

[5] Notably, too, defendant does not contest his conviction of driving while intoxicated.

-11-

camera video or the prosecutor's minimal references to defendant's refusal to submit to a blood draw.

## IV.  DEFENDANT'S WITHIN-GUIDELINES SENTENCE

Defendant argues that his 54-month minimum sentence is unreasonable, disproportionate, and should be vacated as an abuse of discretion.  We disagree.

This Court reviews all sentences for reasonableness.  *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023) (opinion by BOLDEN, J).  "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion" by imposing a sentence that is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender."  *People v Steanhouse*, 500 Mich 453, 459-60; 902 NW2d 327 (2017).  See also *Graham v Florida*, 560 US 48, 59-60; 130 S Ct 2011; 176 L Ed 2d 825 (2010).

Defendant does not challenge his guideline scoring; he argues only that his sentence within the guidelines was not reasonable.  Although a trial court must score and consider the legislatively created guidelines, the guidelines are advisory only.  See *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015).  "[A] trial court has been given broad discretion, within limits fixed by law, to tailor a sentence to the circumstances of each case and each offender, in an effort to balance society's need for protection against its interest in rehabilitation of the offender."  *Sabin*, 242 Mich App at 661.  As noted, on appeal this Court considers whether the trial court imposed a sentence that is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender."  *Steanhouse*, 500 Mich at 459-460 (quotation marks and citation omitted).  Ultimately, proportionality "is a function of the seriousness of the crime and of the defendant's criminal history."  *People v Babcock*, 469 Mich 247, 264; 666 NW2d 231 (2003).

However, when a sentence is within properly scored guidelines, there is a nonbinding, rebuttable presumption that the sentence is proportionate.  *Posey*, 512 Mich at 359.  The defendant bears the burden of demonstrating that his or her sentence is unreasonable or disproportionate.  *Id*.  A defendant may overcome the presumptive proportionality of a within-guidelines sentence by presenting "unusual circumstances that would render the presumptively proportionate sentence disproportionate."  *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (quotation marks and citation omitted).

In this case, defendant failed to rebut the proportionality of the trial court's sentence.  Defendant's prior record variables (PRVs) were calculated at 10 points, which corresponded to Level C, and his offense variables (OVs) were calculated at 65 points, which corresponded to Level V.  The recommended minimum sentence range for Level V-C is 36 to 71 months.[6]  The Department of Corrections recommended a minimum sentence of 46 months, stating:

---

[6] The Legislature classified operating while intoxicated causing death to be a Class C felony, MCL 777.12f, and reckless driving causing death to be a Class C felony, MCL 777.12g.  Level V-C for a Class C felony has a recommended minimum sentencing range of 36 to 71 months in prison.  MCL 777.64.

[C]onsidering [defendant's] status as a veteran and his overall productive life as a citizen for 51 years, the likelihood of re-offense appears low. Nevertheless, the gravity of the instant offense involving a fatality necessitates a term of incarceration to convey a message to both the defendant and the community. Therefore, it is respectfully recommended that [defendant] be sentenced to 3 years 10 months to 15 years . . . .

Defendant argues on appeal that the sentence is not proportionate to him or his offense because he was an honorably discharged veteran, a former corrections officer, and remorseful. However, defendant cites no legal authority to support that any of these constitute the "unusual circumstances" necessary to overcome the presumption of proportionality. See *Bowling*, 299 Mich App at 558.

Moreover, the trial court considered all of this and still imposed a within-guidelines minimum sentence of 54 months. At sentencing, defendant's trial counsel argued for a "downward variance from the guidelines in light of the inflation in the guidelines, in light of the Defendant's acceptance of responsibility, and in light of all the circumstances that surround the Defendant's history." The trial court responded as follows:

In determining the appropriate sentence in this case, the Court has considered the seriousness of the offense, your history, the principle of proportionality, the statutory penalty, the cost of confinement, the sentencing guidelines, the report and recommendation of the probation department, as well as what has been said upon the record at this hearing.

The criteria and reasons for the sentence are the nature and gravity of the offenses, the discipline appropriate to its commission, deterrence against repetition by you and by others, the potential for reformation, vindication for law, and the protection of society.

The record supports that the trial court's within-guidelines sentence was reasonable, considering the seriousness of the circumstances surrounding defendant and his offenses. *Steanhouse*, 500 Mich at 459-460. Although defendant had a minimal criminal history[7] and a record of public service, those facts must be weighed against the irrevocable loss of life in this case. Additionally, defendant's argument regarding remorse is not persuasive. At times, defendant expressed remorse, such as at his sentencing. However, evidence at his trial supported that he de-emphasized his personal accountability, such as when he first denied the results of his BAC test to Karen and then blamed the results on his diabetes. Regardless of defendant's remorse, on this record, defendant has not demonstrated that the trial court abused its discretion by imposing a sentence that is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." See *id*.

---

[7] In 2011, defendant was charged with operating a vehicle while intoxicated, but the charge was not prosecuted after defendant successfully completed probation.

## V. DEFENDANT'S PLEA OFFER

Defendant argues that his trial counsel's assistance was ineffective when counsel permitted defendant to decline a plea agreement, and defendant requests a *Ginther*[8] hearing to develop his claim.

To preserve an ineffective assistance of counsel argument for appellate review, a defendant must move for a new trial or request an evidentiary hearing in the trial court, *Heft*, 299 Mich App at 80, or file with this Court a motion to remand for a *Ginther* hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant did not move for a new trial or evidentiary hearing, so he did not preserve his claims of ineffective assistance of counsel. The standard of review regarding claims of ineffective assistance of counsel are the same as previously stated. Because this issue is unpreserved, this Court's review is limited to trial counsel's mistakes that are apparent on the lower court record. *Id*.

Moreover, defendant's request for a *Ginther* hearing within his Standard 4 brief is procedurally defective. When a defendant fails to file a separate motion to remand and instead only requests a *Ginther* hearing within the appellate brief, the Court of Appeals should deny the request as procedurally defective without reaching the merits of the ineffective assistance claim. See *People v Bass*, 317 Mich App 241, 276 n 12; 893 NW2d 140 (2016) (denying defendant's request for a remand to substantiate his claims of ineffective assistance on the basis that it was improperly made when "his request for such relief . . . appears in the text of his Standard 4 brief, not in a proper motion to remand under MCR 7.211(C)(1)"). In this case, defendant did not file a motion for remand or include a request for an evidentiary hearing within his statement of the issues, so we can dispose of this matter on that basis alone. See *id*.

Even if defendant had properly requested an evidentiary hearing, we are not persuaded that such a hearing is necessary. See *People v Chapo*, 283 Mich App 360, 368-369; 770 NW2d 68 (2009). A *Ginther* hearing is not warranted when the "defendant has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective. . . ." See *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007). In this case, defendant has not identified what information would be gained from an evidentiary hearing. And, in fact, we find there is already an extensive record of how defendant's counsel and the court advised defendant about the plea offer before trial. In light of this record, we conclude that remand for a *Ginther* hearing is unnecessary to address defendant's ineffective assistance claim and that defendant has not established he received ineffective assistance of counsel when considering the plea offer.

"Defendants are entitled to the effective assistance of counsel when considering or negotiating a plea agreement." *People v White*, 331 Mich App 144, 148; 951 NW2d 106 (2020). "Defense counsel must explain to the defendant the range and consequences of available choices in sufficient detail to enable the defendant to make an intelligent and informed choice." *People v Jackson*, 203 Mich App 607, 614; 513 NW2d 206 (1994). To demonstrate prejudice because of ineffective assistance during plea negotiations, the " 'defendant must show the outcome of the plea

---

[8] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-14-

process would have been different with competent advice.' " *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014), quoting *Lafler v Cooper*, 566 US 156, 163; 132 S Ct 1376; 182 L Ed 2d 398 (2012).

The record is clear that the prosecutor offered defendant a plea deal in which the prosecutor would recommend that defendant serve one year in county jail in exchange for pleading guilty to one of the two charges against him. The offer was put on the record at four pre-trial hearings and it is clear from the record that defense counsel notified defendant about the offer, explained the details, and provided defendant an opportunity to ask questions. Further, at the plea hearing, the trial court explained to defendant that he was charged with two felonies, each carrying a 15-year maximum sentence. And if convicted, defendant would serve his sentence in prison, not a county jail. The trial court characterized the plea deal as "a really good plea offer" and stated that if defendant accepted it, the court would not impose a higher sentence.

At the last pre-trial hearing, defendant confirmed on the record that he understood the plea offer, including that he understood that if convicted, he would go to prison instead of jail. Defendant also declined his counsel's offer to ask questions about the plea offer. On the morning of trial, the trial court informed defendant that it would not consider any pleas once the trial began and asked again if defendant would be taking advantage of the plea offer. Defendant's counsel stated that he had "communicated that offer not less than a dozen times to my client, and he's rejected that offer each and every time." Defendant confirmed that he was rejecting the plea offer. The record also reflects that at sentencing, defendant expressed concerns with his counsel's performance at trial. But defendant did not raise any concerns about the advice he received about the plea offer. Defendant stated: "I feel confident in his arguments, Your Honor. I just don't feel confident that in the trial, during the trial, the things that were needed to be—come out of my witnesses, we didn't pull the witnesses."

On appeal, defendant argues that he only rejected the plea offer because his counsel advised him that there were "grounds for excluding the blood alcohol content evidence." But just before trial, even after the trial court denied defendant's motion to exclude that evidence, defendant expressed his understanding of the plea agreement and rejected the plea offer. Accordingly, we conclude that defendant has not established that his trial counsel's performance fell below an objective standard of reasonableness. See *Vaughn*, 491 Mich at 669.

## VI. LACK OF GRAND JURY INDICTMENT

Defendant claims that his convictions are void because he was tried without a grand jury indictment. We disagree.

"Constitutional challenges must be raised in the trial court; otherwise, those challenges are not properly preserved for appellate review." *People v Green*, 322 Mich App 676, 681; 913 NW2d 385 (2018) (quotation marks and citation omitted), overruled on other grounds by *People v Peeler*, 509 Mich 381, 394; 984 NW2d 80 (2022). Defendant raises this issue for the first time on appeal. Therefore, it is unpreserved. See *Green*, 322 Mich App at 681. An unpreserved claim of constitutional error is reviewed for plain error that was outcome-determinative. *Odom*, 276 Mich App at 421. To avoid forfeiture under the plain-error rule, a defendant must show that error occurred; that the error was plain—that is, clear or obvious; and that the plain error affected his

substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). A defendant also must show that the error affected the outcome of the lower court proceedings. *Id*.

The Fifth Amendment of the United States constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury. . . ." US Const, Am V. Defendant claims that, because he was never indicted by a grand jury as guaranteed by the Fifth Amendment of the United States Constitution, which applies to his state conviction pursuant to the Fourteenth Amendment, US Const, Am XIV, the trial court lacked jurisdiction over his case. However, the United States Supreme Court has repeatedly concluded that the Fourteenth Amendment does not require states to apply the Fifth Amendment's grand-jury requirement. *Apprendi v New Jersey*, 530 US 466, 477 n 3; 120 S Ct 2348; 147 L Ed 2d 435 (2000); *Rose v Mitchell*, 443 US 545, 557 n 7; 99 S Ct 2993; 61 L Ed 2d 739 (1979); *Alexander v Louisiana*, 405 US 625, 633; 92 S Ct 1221; 31 L Ed 2d 536 (1972); *Hurtado v California*, 110 US 516, 520-521; 4 S Ct 111; 28 L Ed 232 (1884). This means states have complete discretion to establish their own charging procedures for criminal prosecutions.

The Michigan Constitution provides no requirement for a grand jury indictment. *People v Glass*, 464 Mich 266, 278-279; 627 NW2d 261 (2001) ("There is no state constitutional right to indictment by grand jury; rather, indictment by grand jury is an alternative charging procedure created by the Legislature."). Instead, Michigan's code of criminal procedure establishes that circuit courts and other courts of record "shall possess and may exercise the same power and jurisdiction to hear, try and determine prosecutions upon informations for crimes, misdemeanors and offenses" as they do for prosecutions upon indictments. MCL 767.1. Prosecutors thus have discretion to choose between seeking a grand jury indictment or filing an information after a preliminary examination. See *People v Farquharson*, 274 Mich App 268, 273-274; 731 NW2d 797 (2007). Therefore, the trial court had no obligation to convene a grand jury and did not violate the United States or Michigan Constitutions by not doing so.

There is no validity to defendant's argument that *Hurtado* was decided on the basis of procedural due process rather than substantive due process and as a result, does not apply to this case. Defendant's substantive due process argument for applying the Fifth Amendment's grand jury requirement to states rests on the theory that grand jury indictment is a "fundamental right" implicit in the concept of ordered liberty and therefore should be incorporated against the states through the Fourteenth Amendment's Due Process Clause under selective incorporation doctrine. See e.g., *People v Kevorkian*, 447 Mich 436, 475; 527 NW2d 714 (1994) (outlining the basic premise of a substantive due process argument).

In *Hurtado*, 110 US at 517, the California Constitution of 1879 allowed prosecutions by information after examination and commitment by a magistrate, or by indictment, as prescribed by law. The case was decided in 1884, before the modern understanding of the distinction between

procedural and substantive due process.[9]  However, the Supreme Court framed its analysis as follows:

> The proposition of law we are asked to affirm is that an indictment or presentment by a grand jury, as known to the common law of England, is essential to that 'due process of law,' when applied to prosecutions for felonies, which is secured and guarantied (sic) by this provision of the constitution of the United States, and which accordingly it is forbidden to the states, respectively, to dispense with in the administration of criminal law.  The question is one of grave and serious import, affecting both private and public rights and interests of great magnitude, and involves a consideration of what additional restrictions upon the legislative policy of the states has been imposed by the fourteenth amendment to the constitution of the United States.  [*Id*. at 520.]

This indicates that the *Hurtado* decision was not decided on "narrow" procedural grounds, as defendant argues on appeal.  To the contrary, the *Hurtado* Court considered and rejected the notion that grand jury indictment is fundamental to due process.  See *id*. at 538.  The Court highlighted that due process is about the protection of fundamental rights and liberties, not about adhering to specific historical procedures.  See *id*. at 534-535 (explaining that the concept of "due process" in the Fourteenth Amendments refers to "that law of the land in each state which derives its authority from the inherent and reserved powers of the state, exerted within the limits of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions . . . .").  Since *Hurtado*, the United States Supreme Court and the Michigan Supreme Court have maintained that the Fifth Amendment's grand jury requirement does not apply to states.  See e.g., *Apprendi*, 530 US at 477 n 3; *Glass*, 464 Mich at 278.  Therefore, this issue is well settled, despite defendant's attempts to reframe it as novel.

---

[9] The distinction between substantive and procedural due process emerged over several court decisions.  One early attempt was in the 1921 case of *Truax v Corrigan*, 257 US 312, 349; 42 S Ct 124; 66 L Ed 254 (1921) (BRANDEIS, J., dissenting), in which Justice Brandeis recognized that "Paragraph 1464 does not modify any substantive rule of law, but only restricts the processes of the courts of equity."

Defendant's remaining argument—that this Court should essentially vacate *Hurtado* and the Michigan statutes that dispense with grand jury protections—is illogical. "It is an elementary proposition that state courts are bound by United States Supreme Court decisions construing federal law, including the Constitution." *People v Lewis*, 501 Mich 1, 7; 903 NW2d 816 (2017) (quotation marks and citation omitted). Therefore, with respect to any issue involving the determination of federal constitutional rights, all Michigan courts, including this Court and the Michigan Supreme Court, are bound by thse decisions of the United States Supreme Court. *People v Cross*, 30 Mich App 326, 333-334; 186 NW2d 398 (1971). As a result, this Court cannot grant defendant the relief he seeks.

Affirmed.

/s/ Mariam S. Bazzi
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado